**Dated: March 07, 2008**

**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

**JANICE LYNN RATLIFF**  Case No. 07-80132
  Chapter 7

       Debtor.

**JIM WYNN, INC.**

       Plaintiff,

vs.  Adv. No. 07-8020

**JANICE LYNN RATLIFF,**
**STATE OF OKLAHOMA, EX REL.**
**OKLAHOMA DEPARTMENT OF LABOR,**
**GERALD R. MILLER,** *Trustee of the*
*Bankruptcy Estate of Janice Ratliff*

       Defendants.

## O P I N I O N

On the 22nd day of January, 2008, the above-referenced adversary proceeding came

Case 07-08020    Doc 64    Filed 03/07/08    Entered 03/07/08 11:00:53    Desc Main
EOD 3/7/08 by sev                  Document      Page 1 of 14

on for trial. Appearances were made by Loretta K. Roberts and Gentner F. Drummond, attorneys for Plaintiff Jim Wynn, Inc. ("Wynn, Inc."). Debtor-defendant Janice Lynn Ratliff ("Ms. Ratliff") appeared *pro se.* Ms. Ratliff filed her voluntary Chapter 7 bankruptcy petition on February 12, 2007. On May 30, 2007, Wynn, Inc. filed this action seeking a monetary judgment against Ms. Ratliff for alleged embezzlement of corporate funds. Further, pursuant to the provisions of 11 U.S.C. § 523(a)(4),[1] Wynn, Inc. seeks an order from this Court denying Ms. Ratliff a discharge of any judgment so awarded.[2]

Each party stipulated that the exhibits offered by the other could be admitted without objection. The Pre-Trial Order submitted by Ms. Ratliff and the Pre-Trial Order submitted by Wynn, Inc. have been entered in this matter and supersede all previous pleadings and govern the trial of this proceeding. The Court having heard the testimony of the sworn witnesses, and after reviewing all exhibits admitted in this matter, and listening to the legal arguments of the parties, does hereby enter the following findings of fact and conclusions of law in conformity with Federal Rule of Civil Procedure 52, made applicable to this bankruptcy proceeding by Federal Rule of Bankruptcy Procedure 7052.

---

[1] Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code

[2] In its Complaint, Wynn, Inc. was also seeking to offset against any judgment obtained a wage claim awarded to Ms. Ratliff by the Oklahoma Department of Labor which Wynn, Inc. had appealed. However, at the time of trial, that issue had already been determined by the Court on Wynn, Inc.'s motion for summary judgment. The Court's order granting summary judgment approved a joint settlement agreement which declared the wage claim null and void and agreed to its dismissal with prejudice. *See Docket No. 1 and Docket No. 43.*

2

**Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409. Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I)&(O).

**Findings of Fact**

Jim Wynn began doing business as Wynn Electronics in 1977, in Wilburton, Oklahoma. Thereafter, Mr. Wynn incorporated the business into Jim Wynn, Inc. All of the stock of Wynn, Inc. is owned by Jim Wynn, and it now owns and operates three businesses: (1) a Radio Shack store in Wilburton; (2) Jim Wynn, Inc. Rental Sales and Services, which leases communications equipment to oil field operations; and (3) Advantage Paging and Wireless Co. (also doing business as Wynn Electronics). Mr. Wynn's wife, Dinah Wynn, has worked with her husband in the businesses since 1985, and is vice-president of his companies.

Ms. Ratliff was first hired by Wynn, Inc. in October 1988. She worked in a management position as "office manager." Her duties in that capacity varied. Among other things, Ms. Ratliff's responsibilities during her tenure with Wynn, Inc. included: (1) ordering merchandise and supplies; (2) supervising two full-time sales employees in the Radio Shack store; (3) processing payroll information for herself and the other store employees; and (4) recording and processing payments by vendors and making bank deposits of those payments. At the time Ms. Ratliff left employment with Wynn, Inc. her

compensation was $600 per week.

In the beginning of 2003, Mrs. Wynn, who was responsible for accounts receivable, accounts payable, and deposits, began experiencing severe back problems which necessitated two back surgeries. As a result, both Mr. and Mrs. Wynn were out of the office extensively for long periods of time. Therefore, Ms. Ratliff's duties at Wynn, Inc. increased, while supervision of her work by the Wynns decreased.

Sometime in July of 2003, Ms. Ratliff began cashing Wynn, Inc. corporate checks at two different banks– Wilburton State Bank and Latimer State Bank. Although the Wynns had personal accounts at Wilburton State Bank, Wynn, Inc. did not have a business account with the bank at that time. However, the Wilburton State Bank was physically located only a few doors down from the Wynn, Inc. office, and the tellers at the bank were familiar with Ratliff and knew that she worked for the Wynns. Wynn, Inc. maintained a corporate account at Latimer State Bank. Ms. Ratliff, however, was not an authorized signator on that account.

The checks at issue in this trial involved payments received from Wynn, Inc. customers. The bulk of the checks were made payable to "Jim Wynn, Inc.," while a few others were payable simply to "Jim Wynn." Others were made payable to "Wynns Electronics" or to "Advantage Paging." Ms. Ratliff was responsible for depositing these receivables in the Wynn, Inc. bank account. In some instances, Ms. Ratliff cashed the checks by forging Jim Wynn's or Dinah Wynn's name. In a few others, she simply endorsed the check "Jim Wynn, Inc." The majority of the checks she cashed, however, were endorsed "Jim Wynn, Inc. Janice Ratliff." The checks varied widely in amounts, ranging from a few

4

hundred dollars to some in excess of $10,000.[3] Ms. Ratliff continued to cash selected Wynn, Inc. checks at Wilburton State Bank and Latimer State Bank until April, 2005.

In addition, on eight occasions during 2003 and 2004, Ms. Ratliff used Wynn, Inc. funds to procure cashier's checks at Wilburton State Bank. The cashier's checks were made payable to credit card companies for debts owed by Ms. Ratliff and to other personal creditors of Ms. Ratliff. The cashier's checks ranged in amount from $1,004.00 to $5,084.48 and totaled $21,532.03.[4]

On September 4, 2004, Ms. Ratliff opened a small business checking account at The Bank N.A. in McAlester, Oklahoma, in the name "Janice Ratliff DBA Wynns Electronics," by executing a Sole Proprietorship Resolution of Authority.[5] The initial deposit to open the account was a check from U.S. Cellular made payable to Wynns Electronics in the amount of $14,536.[6] When The Bank requested verification of Ms. Ratliff's ownership of the business, she presented a "Bill of Sale" which purported to sell Wynns Electronics Cellular Business, indicating Dinah Wynn as Seller and Janice Ratliff as purchaser.[7] Ms. Ratliff also presented The Bank with a "letter" dated September 9, 2004, stating "To Whom It May Concern, Cellular Check #1500024049 amount $14,536.00 belongs to Janice Ratliff. Thank

---

[3] *Plaintiff's Exhibit 7.*

[4] *Id.*

[5] *Plaintiff's Exhibits 1 & 2.*

[6] *Plaintiff's Exhibit 5.*

[7] *Plaintiff's Exhibit 3.*

You, Dinah Wynn."[8]  The Bill of Sale, as well as the "letter," were ostensibly signed by Dinah Wynn.  At trial, however, Ms. Ratliff testified that she had signed Dinah Wynn's name to both documents, although she alleged she had Mrs. Wynn's permission to do so.

Thereafter, Ms. Ratliff deposited additional U.S. Cellular checks to her "business account" at The Bank, which together with the initial deposit totaled $116,075.51.[9]  All of the U.S. Cellular checks represented commissions payable to Wynns Electronics.  Ms. Ratliff testified that she used the funds in The Bank account to pay her personal bills and expenses.  She also testified that she did not report these funds as income for tax purposes.

On April 5, 2005, Ms. Ratliff attempted to cash a check dated March 31, 2005, made payable to Wynn, Inc. from Newfield Explortation Mid-Continent, Inc. at Latimer State Bank.[10]  An officer of the bank called Mr. Wynn regarding the matter and was instructed by Mr. Wynn to approve payment of the check and was told that Mr. Wynn would look into the situation.  This revelation set off a series of investigations by the Wynns into their receivables dating back to January 2003.  They contacted various customers of the Wynn companies and were given copies of canceled checks payable Wynn, Inc., Wynns Electronics, or Advantage Paging, but which were never properly deposited into Wynn, Inc. bank accounts.  Ms. Ratliff resigned her employment with Wynn, Inc. on  April 26, 2005, when confronted by the Wynns with their suspicions that she had embezzled a substantial

---

[8] *Plaintiff's Exhibit 4.*

[9] *Plaintiff's Exhibit 5.*

[10] *Plaintiff's Exhibit 7, p. 71.*

6

amount of corporate funds. One day later, on April 27, 2005, Ms. Ratliff made a cash withdrawal of $332.10 to zero out the balance and close her account at The Bank.[11]

Plaintiff's Exhibit 7 contains copies of all of the checks alleged by Wynn, Inc. to have been cashed and converted by Ms. Ratliff. Included with Plaintiff's Exhibit 7 is a demonstrative which summarizes all of the improper transactions and totals them as to each of the three banks. The totals alleged to have been converted by Ms. Ratliff are as follows: (1) $252,620.55 through Wilburton State Bank; (2) $115,327.56 through Latimer State Bank; and (3) $116,075.51 through The Bank, N.A.[12] Though not admitting to any wrongdoing, when directly questioned regarding these figures, Ms. Ratliff did not dispute these amounts.

Ms. Ratliff's response to Wynn, Inc.'s allegations of embezzlement took several forms. She testified as follows: (1) that all the funds from the checks she cashed at Wilburton and Latimer State Banks were returned to the Wynn, Inc. office and placed in the safe, used to pay Wynn, Inc. business expenses, or given directly to Mr. or Mrs. Wynn, or to various third-parties at their direction; (2) that she had permission from Jim Wynn to procure the cashier's checks at Wilburton State Bank made payable to the credit card vendors for her personal expenses and these were in the nature of gifts, or alternatively, that they were loans that Mr. Wynn did not require her to repay; (3) that the money she received in addition to her salary was in the nature of commissions or bonuses for taking on extra employment

---

[11] *Plaintiff's Exhibit 5, p. 25*

[12] *Plaintiff's Demonstrative to Exhibit 7, p. 17.*

7

responsibilities at Wynn, Inc.; and (4) that the funds deposited in The Bank account in McAlester were essentially "hush money" to prevent her from blowing the whistle on the Wynns' illegally run businesses. Specifically, Ms. Ratliff alleged that Wynn, Inc. was "defrauding" the oil companies it provided communications equipment to[13] and that it kept "two sets of books" for tax purposes.[14]

Ken Bass, President of Wilburton State Bank, was subpoenaed to appear at the trial. He testified that he was convinced that Ms. Ratliff had embezzled funds from Wynn, Inc.,[15] and that by not following proper bank procedure, his bank was complicit in the wrongdoing.[16] Further, he testified that Wilburton State Bank had reached a settlement agreement with the Wynns by paying them a substantial settlement sum. Mr. Bass also testified that the Wynns were long-time members of the community and had the reputation of being upstanding, honest business people.

Both Dinah and Jim Wynn testified that Ms. Ratliff never had their permission to endorse or cash any Wynn, Inc. checks, and that neither they nor Wynn, Inc. ever received the cash or the benefit of the cashed checks. Mr. Wynn testified that it was Wynn, Inc.'s policy that all corporate checks were to be endorsed "by stamp for deposit only." Mrs. Wynn

---

[13] For examples of Ms. Ratliff's allegations, *see Defendant's Exhibit K.*

[14] For examples of Ms. Ratliff's allegations, *see Defendant's Exhibit L.*

[15] The Wynns presented the bank with an Affidavit of Loss.

[16] Mr. Bass testified that tellers did not have authority to cash third-party checks without authorization of an officer of the bank, but that this procedure was not followed with respect to the Wynn, Inc. checks cashed by Ms. Ratliff.

8

testified that it was their practice for all corporate bills to be paid by check, not cash, in order to create a paper record. Further, Mr. Wynn testified they he never authorized Ms. Ratliff to procure the cashier's checks at Wilburton State Bank to pay her personal credit card debts and obligations.

Both Mr. and Mrs. Wynn testified regarding why they believed the fraud was not discovered sooner. First, they both expressed that they trusted Ms. Ratliff, their long-time employee. Additionally, Mrs. Wynn explained that Ms. Ratliff's actions were not detected sooner because the businesses had a very high rate of cash flow and that the customers whose checks were cashed were given credit in the accounting system for their payment from check stubs or payment advices. Mr. Wynn testified that Ms. Ratliff's actions went unnoticed because Wynn, Inc. did not reconcile its bank statements against records of daily receipts.

Additionally, both Mr. and Mrs. Wynn specifically denied Ms. Ratliff's allegations that Wynn, Inc. was in some manner defrauding its oil company customers or was somehow cheating the IRS. Further, Mr. Wynn testified that he never conveyed any ownership interest in any of the Wynn businesses to Ms. Ratliff, and that Dinah Wynn would not have been able to do so because she did not have any ownership interest, nor any power of attorney to act on his behalf. Mr. Wynn also testified that Wynn, Inc. had recovered its losses from Wilburton State Bank through settlement, and that it was seeking recovery from Latimer State Bank and The Bank, N.A. in state court.[17]

---

[17] The actions filed were *Jim Wynn, Inc. v. Latimer State Bank, Janice Ratliff and Rachel Conley*, Case No. C-06-57 in the District Court of Latimer County, State of

9

Case 07-08020    Doc 64    Filed 03/07/08    Entered 03/07/08 11:00:53    Desc Main
Document      Page 9 of 14

The allegations that Ms. Ratliff cashed checks belonging to Wynn, Inc. at Wilburton State Bank and Latimer State Bank, and that she procured cashier's checks at Wilburton State Bank to pay person debt, are not in dispute. Neither is the fact that she deposited U.S. Cellular checks into an account at The Bank, N.A. and used them for personal expenses in dispute. What is in dispute is whether she misappropriated the funds from the cashed checks for a use unintended by Wynn, Inc., and whether she had permission from the Wynns to procure the cashier's checks or to open the account at The Bank, N.A. and deposit the U.S. Cellular checks for her personal use.

The Court finds that Ms. Ratliff's sworn testimony is simply not credible. It is not probable that an employer would pay an employee's personal debts of $21,532.03 from corporate funds. Further, Ms. Ratliff was unable to satisfactorily account for the proceeds of the cashed checks. Nor, is it credible that the $116,075.51 worth of U.S. Cellular checks deposited in the account at The Bank, N.A. represented bonuses or commissions to Ms. Ratliff when her annual compensation was approximately $31,200 per year. In addition, Ms. Ratliff was unable to prove any of her allegations against the Wynns regarding illegal business behavior, so it is not credible to believe that those funds were given to her as "hush money."

Therefore, based on the testimony and evidence presented, the Court finds as follows:

---

Oklahoma, and *The Bank, N.A. v. Jim Wynn, Inc. and Janice Ratliff*, Case No. C-05-1230 in the District Court of Pittsburg County, State of Oklahoma. Both actions had been stayed as against Ms. Ratliff due to her bankruptcy filing. *See Docket No. 1*.

10

Case 07-08020   Doc 64   Filed 03/07/08   Entered 03/07/08 11:00:53   Desc Main
Document      Page 10 of 14

(1) that Ms. Ratliff was lawfully in possession of the Wynn, Inc. checks because it was her employment duty to deposit such checks into a Wynn, Inc. corporate bank account; (2) that Ms. Ratliff did not have the Wynns' permission to cash checks belonging to Wynn, Inc. at Wilburton State Bank or Latimer State Bank; (3) that neither Wynn, Inc. nor the Wynns ever received the proceeds of the checks cashed, or the benefit therefrom; (4) that though it is not known precisely what Ms. Ratliff did with the funds,[18] she appropriated them for a use or purpose not intended or authorized by Wynn, Inc.; (5) that Ms. Ratliff did not have the Wynns' permissions to procure the cashier's checks at Wilburton State Bank with Wynn, Inc. funds to pay her personal credit card debts and obligations; (6) that no ownership interest in the Wynn companies was ever conveyed to Ms. Ratliff; (7) that Ms. Ratliff did not have the Wynns' permission to open the account at The Bank, N.A. doing business as Wynn Electronics; (8) that Ms. Ratliff did not have the Wynns' permission to deposit the U.S. Cellular checks into such account for her personal use; and (9) that the actions taken by Ms. Ratliff were done so with the intention of wrongfully depriving Wynn, Inc. of its property.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

---

[18] There was no evidence presented regarding a change in Ms. Ratliff's standard of living as a result of the embezzlement, only speculation as to a gambling problem.

**Burden of Proof**

The standard of proof necessary for Wynn, Inc. to establish its claim against Ms. Ratliff for damages resulting from embezzlement is determined by state law. The Oklahoma Supreme Court has stated that "[t]he clear-and-convincing standard is employed 'in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interest at stake in those cases is deemed to be more substantial than mere loss of money and some jurisdictions reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof.'"[19] Therefore, the Court will employ the clear-and-convincing standard of proof in determining whether Ms. Ratliff embezzled funds from Wynn, Inc..

Regarding Wynn Inc.'s request for the denial of a discharge of any monetary judgment obtained, exceptions to discharge are to be narrowly construed in favor of the debtor so as to promote the "fresh start" policy of the Bankruptcy Code.[20] Under § 523, a creditor seeking to except its claim from discharge must prove the claim is nondischargeable by a preponderance of the evidence.[21]

**Conclusions of Law**

In Oklahoma, embezzlement is defined as the "fraudulent appropriation of property

---

[19] *Johnson v. Board of Governors of Registered Dentists*, 913 P.2d 1339, 1345 (Okla. 1996) (quoting *Addington v. Texas*, 441 U.S. 418, 423 (1979)).

[20] *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir. 1993).

[21] *See Grogan v. Garner,* 498 U.S. 279, 287 (1991).

12

of any person or legal entity, legally obtained, to any use or purpose not intended or authorized by its owner."[22] Based on the above findings of fact, the Court concludes that there is clear-and-convincing evidence that Ms. Ratliff fraudulently appropriated the property of Wynn, Inc. for a use or purpose unintended by Wynn, Inc. Specifically, Wynn, Inc. proved that Ms. Ratliff embezzled from it a total of $484,023.62 by (1) cashing checks belonging to Wynn, Inc. at Wilburton State Bank and Latimer State Bank and keeping said cash, (2) procuring cashier's checks at Wilburton State Bank with Wynn, Inc. funds to pay her personal debts, and (3) depositing Wynn, Inc. funds into an account at The Bank, N.A. which were used for her personal benefit. Therefore, judgment should be entered against Ms. Ratliff in favor of Wynn, Inc. for its monetary losses suffered in that amount.

Section 523(a)(4) of the Bankruptcy Code excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[23] For purposes of nondischargeability under § 523(a)(4), embezzlement is defined under federal common law as the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.[24] Embezzlement under § 523(a)(4) requires fraud in fact rather than implied or constructive fraud.[25] Specifically,

---

[22] 21 Okla. Stat. Ann. § 1451.

[23] § 523(a)(4).

[24] *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 765 (10th Cir. 1988).

[25] *Driggs v. Black (In re Black)*, 787 F.2d 503, 507 (10th Cir. 1986), *overruled on other grounds* by *Grogan v. Garner*, 498 U.S. 279 (1991).

13

the elements required to prove embezzlement are: 1) entrustment; 2) of property; 3) of another; 4) that is misappropriated; 5) with fraudulent intent.[26]

By proving in this Court the elements necessary to obtain the monetary judgment against Ms. Ratliff for embezzlement, Wynn, Inc. has also satisfied the elements for proving embezzlement for purposes of § 523(a)(4). Therefore, Wynn, Inc. is entitled to an order that the monetary judgment entered by this Court is nondischargeable.

## Conclusion

Based on the above findings of fact and conclusions of law, the court determines that plaintiff, Jim Wynn, Inc., is entitled to a judgment in the amount of $484,023.62 for monetary losses sustained as a result of embezzlement by defendant, Janice Lynn Ratliff. The court further determines that said judgment is nondischargeable by virtue of §523(a)(4). A separate judgment consistent with this Opinion is entered concurrently herewith.

---

[26] *In re Tilley*, 286 B.R. 782, 789 (Bankr. D. Colo. 2002).